Paul Bearley, and I represent Lou Anne Shalley, a plaintiff in this case. I'd like to reserve five minutes for... I think there's one main issue in this case, and that's how to define accident in this insurance policy. And there's a long line of Oregon cases... Mr. Bearley, would you please speak up? I'm sorry, I'm not seeing some of what you're saying. Oh, I'm sorry. There's a long line of Oregon cases that define accident as an incident that's contrary to intention and expectation. And under this definition, there's really one critical fact here, and that's that Mr. Challey didn't expect or intend to die on the mountain. Except for suicides, most people wake up in the morning not expecting to die by sundown, and yet some do. They walk down the street and... That's true. Some people suffer a massive heart attack and die having no previous medical history. Is that an accident? No, I don't think that would be an accident. The cases say what they say, and they say that an accident is something that's contrary to intention and expectation. That's the It's not a very useful definition. It doesn't exclude very much. So much of what happens in life is contrary to expectations, and yet people would not call it accidental. And if you include everything that is not expected that results in death, you would sweep in a lot of things into the concept of accident that I think no reasonable person would include there. I think no matter how you define accident, there are going to be incidents, I think, that fall within the definition, but that everybody understands is not an accident. And I think that's part of what the boss... Why is that situation with the deceased here? He went on a trek, and he suffered a sudden onset of a medical condition which caused his death. Why is this the kind of thing that into the realm of a volcano and got injured and died that way? That would be an accident. Well, I think I go back to the case law, and over and over again the Oregon courts are saying you've got to look through the eyes of the insured and what did they expect or intend. And regardless of whether or not... Do you think, looking from the point of view of a reasonable insured, that a reasonable insured would say, list the ways you might die that are accidental, that anybody would list in this kind of situation? What is accidental about what happened here? What is it that makes it accidental? Well, he didn't expect or intend to die on the mountain. But that doesn't, again, that doesn't differentiate from... How does that differentiate from the guy who walks down the street and had a massive coronary and had a stroke or some other medical condition that causes a medical death? Well, by the same token, Allstate's definition is so broad that it excludes virtually everything. So isn't the point that Allstate didn't define it? That's exactly right. You know, if somebody said to me, how did he die? I'd say he died in a climbing accident. So maybe I would disagree with Judge Kaczynski about how I would characterize it, but Allstate is the insurer here, and if they wanted to exclude this or exclude something else, they could do that, but they haven't done it. They've left it to a rather tortured line of organ cases. That's exactly right. So which organ case do you think we ought to look to? Well, I think the best cases here are Finley and then McCormick and Baxter. McCormick and Baxter says that the Botts case did not alter or amend the definition of accident that the court came up with in Finley, and that's the one that says you've got to look through the eyes of the insurer. It didn't exclude disease or infirmity of body or mind. That's a specific exclusion, right? Yeah, it is. Why doesn't that fall within the exclusion? Even if, let's say, it falls within the broad definition of accident, why doesn't this fall within it? Well, we do have pretty... ...or by falling into a burning volcano. It was a fatherly infirmity, no? Well, we do have a pretty clear organ case on what a disease is and just kind of an exclusion. It says a disease is a disorder of an established or settled character. I thought they used infirmity here, disease or infirmity. That's what the exclusion says. Okay, is infirmity the same as disease? I wouldn't think so. I would think that somebody, let's say, who... I mean, just to come up with something, that somebody, let's say, is in a wheelchair, I might say has an infirmity, although they might be perfectly healthy, maybe in a wheelchair because of an injury on the legs or something, and so they may not have a disease, but they would have an infirmity. Is an infirmity different from a disease? I see your point, but I'm not aware of any case law that actually makes that distinction, and I think... But they do use separate terms that have somewhat different meanings or connotations. Why wouldn't this have been an infirmity? If you look at what the two doctors here testified to, both of them said that this is just a temporary condition that can be alleviated if you just come down in elevation. An infirmity can be temporary. I mean, let's say you have a broken leg in a cast. You have to use crutches. You would say you've got an infirmity. That's not a permanent infirmity. That's a temporary infirmity. It's quite common. Why wasn't this a temporary infirmity, something that happened? It just happened to be that... I mean, it could have gone away. He could have, let's say, he descended more quickly, I believe. The infirmity would have gone away and nothing would have happened. It just so happened that the infirmity lasted so long that, rather than that, it wasn't alleviated. Like I said, I see your point, but I think you've got to go back to the Oregon case law that talks about this having to be of an established or settled character. I'm sorry, those involve disease, right? Yes, ma'am. It did also argue that this was an infirmity. I don't recall that they did. I'm sure she'll tell you. But it's in the policy, right? It is. If you look at the policy case, the one in Oregon... How well established does a disease have to be under the Oregon case law? Well, they don't set a time limit. They say established or settled. And if you look then again at the affidavits of these two doctors, they're saying this could have been alleviated as soon as he came down the mountain. I suppose in a matter of hours it would have gone away and he would have been fine if he'd been able to descend that quickly. Which way does that cut? I beg your pardon? I'm sorry, which way does that cut? It certainly doesn't have a settled or established character. I think it cuts in favor of saying this is not a disease. Let's say somebody catches a virus, Ebola or something. Sometimes you kill somebody within six hours. You're healthy at one point. Not everybody goes through this, but it sometimes can be very fast. Marburg, one of those really nasty viruses, and it kills you. Would that be an accident because it didn't last very long? Are you asking whether that would be a disease or not? Yeah. I'm sorry, would that be a disease, yeah? Yeah, I would assume that would be a disease, yeah. It sounds to me like that's not much longer than what happened to the deceased here. He goes up there. The report says he's tired, he's looking winded, and it takes several hours. He makes it all the way to the top, and then he makes it down. He made it to the rim, and then he made it to the station down. So there was several hours. Would that be enough to be established? Well, like the court in the Paulson case said, absolutely not. Why would the Ebola case be established with a disease? There's a different distinction, I think, between the Ebola kind of a situation and what this is. Because this is not – I don't think this comes within the common understanding of a disease. It's just some sort of a stimuli that is temporary. Once it's removed, you're – Well, but you would say it's not a disease because it's not long enough established. You want to argue that it's not a disease because of some other reason. We can talk about that. I think both. We're talking duration. I think both. Why is this not a disease? What is the other reason? Well, I think for both reasons. And like I said, this is – the doctors both said that this is just a condition that you can be afflicted with for a very short period of time simply because you're in a high altitude, and once you come down, then it's alleviated. On the issue of disease and infirmity, don't the Oregon courts say they're the same, that they're treated as synonymous? Would that be the Hutchinson case? Yes, the Hutchinson case. Okay, yeah, you're right, Your Honor. So there is no distinction in Oregon between disease and infirmity. That's correct, I think. Thank you. Anyway, there are a couple of ways that you can come at the accident issue, and one way that you can look at this is that it's an ambiguous provision, I think you mentioned. And if you look at the concurrence in the Pope case, the Chief Justice of the Oregon Supreme Court there said that accident is an ambiguous term and it's up to the insurance company to give it whatever meaning that they want to. They can define it narrowly if they want to. Here they didn't. So I think for lack of a better term, they're stuck with the very broad interpretation that the Oregon courts have given to the term accident. Which sweeps in any time you get up in the morning and die, you don't expect it to? I'm sorry? Which sweeps in any situation where you wake up in the morning and you die and you don't expect it? In a sense, Your Honor, I think that may be what the Oregon courts are doing here intentionally because I think what they're trying to do is force the insurance companies to define this kind of a term in a way that's clear. That's what the court said in the Pope. In fact, they said, unless insurers word their policies clearly, they have to bear the burdens arising from their ambiguities. So the burden is on them to come up with a clear, or if they want a narrow definition, they can do that. They haven't done it here. And I think the consequence is that they have to live with a very broad definition of accident. And it does sweep in a lot of – in fact, that's what the court in Paulson said, was that with this kind of a definition, virtually anything other than an intentional death is an accident. And I think that's what we have here. That's what the Oregon courts have done, and I think they've done it over and over again over the last 40 years. Now, Allstate has argued for a foreseeability standard. I don't think that's ever been applied in any of these cases. They mention foreseeability in passing, however, when the cases are not 100% crystal clear. There's some dicta in BOTS that suggests that in certain circumstances that might be an appropriate standard, but that wasn't the set of facts that they had, and it was a very narrow holding. BOTS applied by its own terms only to on-the-job heart attacks, and I think that was the extent of its holding there. And then if you look at McCormick and Baxter, it said that BOTS didn't alter the definition of accident that the court came up with in Finley earlier. So I think that's the definition that we need to deal with. Going back to whether this might be ambiguous, you know, under the Hoffman case in Oregon, if you have two definitions of a policy term and both of them are plausible, then you look at the policy as a whole, and if there's any provision in there that casts or sheds light on one or the other, then you go that route. But if not— But if you lined up 100 people and asked them, well, there's an accident, you wouldn't get to 71, they would say. I mean, exclude lawyers. You sort of go down to the courthouse and— Well, this certainly isn't in the record, Your Honor, but I've had a number of lunch conversations with people. I've asked them, and the reaction I get uniformly is, yeah, this is an accident. I think it is. Were they lawyers? No, they weren't. But if you lined up 100 climbers and asked them how he died, they'd say he died in a climbing incident, wouldn't they? I think they probably would. But going back to Hoffman, if we have two plausible definitions here, you look at the policies of all, and the only thing in the policy that all state has identified that they think sheds some light on this is the suicide exclusion. They're saying that our definition renders the suicide exclusion redundant. It doesn't make any difference to your case if he had died of a heart attack there or anything else, if he had a stroke, as far as you're concerned. I think that's probably right. Whether he was there or at work or at play or anywhere. Well, all state would always exclude or always deny coverage under those kinds of facts because they say it's always reasonably foreseeable. If you want to swim across a pond and you drown, all state's going to exclude or deny coverage because they say it's reasonably foreseeable that you could drown while swimming. But most people would say that's an accident. And all these cases in Oregon, so you have to look through the eyes of the insurer. Did they intend or expect to die at that point in time? And the answer is no. I thought you'd look at the eyes of the insurer and say, when you're buying a policy, do you reasonably expect this kind of condition, this kind of event to be caused by the insurance? Now, that's really the test, isn't it? Is this a risk you reasonably thought you were insuring against? I think what the cases are saying is that you look through the eyes of the insurer on the day of the incident and did they expect or intend this particular result. And, like, for instance, if you look at the Finley case and the way the court applied the facts there, I think that's exactly what they're doing. That's the case where the insurer drove up into the mountains during January and the court said he didn't expect to run into a snowstorm. He didn't expect his car to break down. And those were the kinds of facts that the court found persuasive and they held that that was an accident. So I don't think the focus is on what you expect or intend when you buy the insurance. It's the incident in particular that you're looking at. Does that answer your question? I suppose it would be answered. Okay. All right. I think in the case of the Rockets Association, going along, you would consider an accident. I'm sorry? In the case of the Rockets Association, it goes along. Asphyxiation? Asphyxiate themselves. Oh. Yeah, I think that probably would under this definition. Of course, now all states can define accident in any way they want. They can exclude that kind of behavior. They can do any number of things to avoid liability. It becomes a little difficult because people engage in all sorts of conduct and Congress might want to think of a policy that's longer and longer and makes it less likely people will read it and figure out what's in it. Well, I think that's not the direction that the Oregon courts have taken, though. I think they're putting the burden on the insurance company to, like the judge said in the Pope case, to define things as clearly as possible. Otherwise, they have to live with this broad definition. They've been pretty clear about that, I think. Going back to the we have these two plausible definitions, they've said that the suicide exclusion is the only thing that sheds light on it and that it's redundant under our definition, but what they don't say is that it's redundant under either provision because suicide is obviously an intentional act, and an intentional act will never come within the coverage clause of an accidental death policy. So it doesn't matter how you define accident. Suicide exclusion will always be redundant. So that doesn't shed light one way or the other on which one is more plausible, and then under the Hopkins case that means that you have to construe it in favor of coverage. Time's up. Thank you. May it please the Court, Lisa Litter appearing on behalf of Allstate Insurance Company. I'd like to start off with the point about how you construe the term accident in this particular context and kind of tie it into Judge Kaczynski's questions about how this relates to the other cases from Oregon. And I think it's very important to distinguish the type of policy you're dealing with. It is true that the policy does not define the term accident. It is also true that the Oregon courts have said there is no universal definition of accident that applies in all contexts. In their reply brief, they challenged our discussion of that fact based on the age of the Botts case where the court discussed this. But in the more recent case in 1998 in the Fox case, the court went back to that very point and said and in fact quoted the provisions from Botts talking about the fact that there is no universal definition and that we have to consider it in the context. In Fox, it was a somewhat unique situation because you had an insured seeking to recover, beneficiary seeking to recover for the death of the insured under an uninsured modus provision where the insured had gotten into a vehicle with someone who intentionally wrecked the vehicle. The insured did not intend to die in the accident, but he rode along anyway and the accident went much further than they intended and he died. The question for the court was, is this an intentional act and how do we determine that? The court was dealing in this situation with a first party context which would make you think you're in the same kind of situation we are here. The important difference about Fox is that the court said the analysis has to come from what was required by the U.S. statutes in Oregon and it went through the legislative history and determined that the legislature intended the analysis of accident to be based on the analysis that applied in third party liability cases. The important distinction between what we're dealing with here in terms of defining accident and what was involved in all the third party cases on which plaintiff relies for its definition of an accident is something that you don't intend or expect is that third party liability policies exclude liability where the result, the thing for which the insured is being sued is something that was intended or expected from the standpoint of the insured. That requirement in the policy forces the court to look at what the insured intended or expected. And the Oregon courts have defined that to mean you look at whether the insured intended the outcome, intended the result. The court in Fox in talking about the issue and how you define accident. I'm sorry. Are you saying that Mr. Challi intended to die? No, absolutely not. We're saying that that is not the test. In Fox the court explained that the fact that you define accident in the way it was done in McCormick and Baxter or in Box as something that is unintended or unexpected doesn't solve the answer because the court still. What is the test in your view? The test is whether the event that you intentionally engaged in, the voluntary act in which you intentionally engaged in, was reasonably foreseeable to cause the result, not whether some other event contributed to cause the result, but whether this caused the result. Okay. So he's on the mountain and instead of getting tape or haste, he steps into a crevasse and goodbyes. Is that an accident? That is an accident because there is another event there. What is the event? He intentionally climbed the mountain and got himself into a situation where he could step into a crevasse. If you're going to say he intentionally stepped into the crevasse, then we're talking about a different situation. If he stepped into the crevasse unintentionally, there is an additional event that created the problem that he faces, the injury or death that results from him falling in the crevasse. So he's walking across the snow and he doesn't step in a crevasse, but the crevasse falls out underneath him, which is what normally happens. Correct. He hasn't done anything more than walking across the snow, and he intended to put his foot each step of the way. But something else contributed to his situation. There was an unforeseen, as the Court described. So what is that? It's an accident because what? That is an accident because there was some mischance, mishap, or unexpected event, which is the language the Supreme Court has used in talking about accidents in connection with first party policies. Well, what if I get in a car and someone rams into the car? I intend to drive the car. You intend to drive the car. You don't intend for someone to ram into you. And the important point about this case is. Okay, I get in a pond and I drown. If you get into a pond knowing that you can't swim and you get yourself out. Oh, I think I'm a wonderful swimmer. Then there's some event that caused you to drown. It's not just the fact that you're in water. Nope, they just find my body in the water. I've swum across this pond a million times, and I swim and I drown. It can become a very difficult definition under some circumstances. The problem you have here. What about if you're in an airplane and you don't intend to die and you don't know that, in fact, you're sensitive, maybe more than other people, and all of a sudden you get hate in the airplane? Is that an accident? I think in that situation, because it is unforeseen to you, both in the context of you not knowing that this is a possibility to you. The situation we have here is that there's not something additional that created it. No, but see, now you're changing definitions on me. But I need to talk. No, but see, the difficulty is that the insurance company chose not to define accident. And as we lay out all these scenarios, it kind of depends on how you feel about it. There's not an actual objective criteria that we can follow. Well, there is an objective criteria because you have to look both at the nature of the events that are involved and what it is that caused the injury. In this situation, the only thing that caused the injury was the exposure to the very conditions he chose to expose himself to. The fact that he was there is the only thing that can create what he faced. Well, then why didn't you exclude mountain climbing if you don't want people going mountain climbing? Because the company, I guess, is willing to cover situations where you engage in mountain climbing, but something else happens, like you fall into a crevasse or you trip and fall and break your leg or something along those lines. What if instead of climbing Mount Kilimanjaro, which he did intentionally, I drove my car up Pike's Peak, which is like 14,000 feet, and the same thing happened? Would that be an accident? If you drive to the top of Pike's Peak at 14,000 feet and expose yourself, how do you get there? Now, yes or no, is that an accident? Yes. That is not an accident if you intentionally drive yourself up there, whether you're climbing or driving. If you expose yourself to high altitudes and the fact that you are at a high altitude is the only thing that contributes to your death or injury, what you're trying to define as an accident, it's something you intentionally expose yourself to. That's different than the situation of if you go up to Pike's Peak and for some reason, something intervenes and causes you to drive off the road. There's lightning outside and I kind of like lightning, so I walk outside and I intentionally expose myself to it, and bam, I get hit and I'm dead. Is that an accident? That's not an accident. If you intentionally walk out into the lightning and choose to expose yourself to the very condition that results in your death, you have chosen to expose yourself to the risk that is not a mischance, a mishap, or an unexpected event as the court has defined it. So if you walk out in the rain and you happen to get hit by lightning, that's not an accident? If you walk out into the rain and don't know that there's a lightning storm and get hit, that is an accident. She talked about a situation where you walk out there wanting, but you want to go out to the lightning. That's a different situation. Let's say you don't want to go to the lightning. Let's say it's a storm, normal storm conditions, and there's lightning and you walk out and you get hit by lightning, as many people do. That's an accident? Let's say you're in the forest and you get caught in the rain and lightning hits you. That would put you more in line with the cases like the Finley situation where the person went on a trek, not expecting the snowstorm to be what it turned out to be, and faced situations or circumstances that the court defined as unforeseen, unexpected, or a misstep or mischance. It's not foreseeable that you're going to, you know, it's not expected that you will die and not go into Darrow. Otherwise you wouldn't have 11,000 people walking up there every year. You'd have 11,000 dead people up there. So here's the difficulty of having an argument, is that if you are using this foreseeability test, which you argue district courts seem to pin the case on, how do you define that foreseeability? Because I don't think death is what most people expect when they go on a walk on Mount Kilimanjaro. Not expected. And the court talked about this a little bit in the district court, and the Oregon Supreme Court has talked about situations where while what happened to a particular person was not planned or intended. For example, in the Botts case where you had the man operating the grater machine and he had the heart attack, from his perspective this was an unusually stressful day because trucks were coming in too fast and he wasn't quite trained as well as he needed to be. And the court said although the level of stress that he experienced is not all that common and although it's not necessarily abnormal, although it's not all that common, it's not abnormal or unusual. It's very well known that hate and haste occur from climbing high altitudes when your body is not adjusted to that. This is something people choose to do and it's why people get trained for it. It's not usual that people die from this. It may not be usual that they die from it if they properly respond to it. But you know they'll never know until they die or don't die, right? Well, that's correct. They'll never know if they're going to die. I mean, if they live, they didn't die. I mean, it's very straightforward. But the problem is he chose to put himself in a position where the only thing that caused his death is the very condition he chose to expose himself to. He chose to reach an altitude where there was that risk. And it was that voluntary choice. It's not a situation where... Does it matter whether the risk is one in ten or one in a hundred or one in a thousand or one in a billion or one in a billion? It might matter as to, in that sense, it might matter as to whether it can be considered a mischance, a mishap, or an unexpected event, but where it's something that's common knowledge. Something for which people at Mount Kilimanjaro, at Mount McKinley, at Mount Everest, there are... Drowning is a common event. In fact, that's why we have lifeguards at swimming pools and beaches. And it's common knowledge that you can drown in the ocean, for example. Certainly. So if I go out and I go swimming and I drown, that's not an accident because it's common knowledge. In fact, it's so common that they even, the government, employ lifeguards to take care of me. What is the difference there in legal construct between that and Mr. Chales? The problem there comes in the circumstances under which it occurs. If you are in a situation where it's reasonable not to expect that you would drown because you're able to swim, the lake is normal, the ocean is not an extreme corner, something along those lines, and you simply aren't capable of swimming and you choose to expose yourself to something you're not ready to handle, that's going to be a voluntary act. If you go out in the ocean and the waves get stronger, there's an undercurrent, there's something unexpected, that's a different situation. And that's the kind of... What if you go out swimming and you get a cramp in your leg? That, again, is an unexpected event. And that's something that the court talks about. What's unexpected about it? I'm sorry? What's unexpected about it? People get cramps in their legs swimming all the time. But what you did is you chose to expose yourself to the water. There was not another event that came in. If you drown just exposing yourself to the water, that's different than drowning, exposing yourself to the water, and having another event like the cramp. That's not the situation. He didn't go up there and... I'm sorry, I don't understand the situation. The cramp is a bit like what happens to the chair, right? No, it's not. It's different because... Why is it different? You're... Because you have... Because you're putting more stress on them than you normally do. Let's say you've been sort of a couch potato, and so you go out and you get really ambitious when you're swimming, and your legs just don't take it, and you're out farther than you really should have gone, and you get a really bad cramp in your legs, and you can't continue swimming. Isn't that highly analogous to what happens to... I still think it's different because it really is a two-step process. You have the choice to go in the water, you have the occurrence of the cramp, and the combination of the two causes you to drown. In this situation, you have the choice to expose yourself to the high altitude. It is that exposure that caused him to die. It's not that, for example, that he fell and broke his leg, and because of that he couldn't get down in time. Right. I mean, it's one thing if he goes up high altitude, and all of a sudden there's no oxygen, and that kills him. But he actually, he goes up there, he suffers a medical condition, and that's what causes his death. It was sort of an intervening step, not unlike my charley horse. But the difference between the charley horse... When I get a stroke while swimming, I'm a really, really good swimmer, and I go out really, really far, and I suffer a stroke, and if it happens here on the street, it would be a minor thing. Paramedics would easily say no permanent damage, but it's just bad enough that I can't swim back. And again, that becomes an extra event or an extra element that adds to the reason why you died. That's not the situation here. He exposed himself to the very condition that caused his death and chose to do so. It's what the court has talked about in the difference between the Botts and Phillips cases and then the Finley and Pope case. In the Botts case, you had the greater operator. In Phillips, you had the man who was shot after he kicked in the door to the neighbor's house who already knew had a gun and got shot, and the court said it was reasonably foreseeable that when he did that, he would get shot. In the Finley case, you had the person driving to Nevada who got stuck in the snowstorm and eventually caught pneumonia and died. Getting stuck in the snowstorm was different. Do we know how foreseeable it is that you'll die if you go climbing from a tower? We know that exposure to high altitudes is what causes hate and haste. We don't know the percentage... I understand, but that wasn't my question. We don't know the percentage of people who are going to die climbing any mountain. We don't know the percentage of people who are going to die doing any activity. What do you mean we don't know? It's just not in the record, is what you're saying. I'm sorry? It's not in the record. No, it's certainly not in the record. I mean, it's a little bit different than kicking in the door when you know a guy has a shotgun in his hand when it comes to foreseeability. Well, but it's tied to the distinction that the court talks about between the Botts and Phillips cases and then between Finley and Pope where there is something that is unexpected. Some other thing intervenes. It's unexpected. It wasn't part of what you intended to do. He intended... Why wasn't haste as unexpected as a cramp? Because haste is the result of the very condition he chose to expose himself to. In the swimming situation where you get a cramp, you choose to expose yourself to the water. You didn't say, I'm going to go into the water, know I'm going to have a cramp, and then I'm going to drown. There is something else that intervenes. It's the same thing. He goes into the water. The water causes the cramp because we know the water can cause that, and then he drowns. And there's no difference between the fact that being at altitude in some situations could cause hate or haste. But it might not. You might not get a cramp and then you walk out of the ocean fine. The rest of the people on his team walked down the mountain. So what's the difference? You're saying the intervening causes the cramp? In his situation, in Mr. Talley's situation, you have exposure to high altitude, which causes death through the mechanism of hate and haste. But it causes death because of the exposure to the very condition he voluntarily chose to expose himself to. If you're swimming and you have a cramp, you chose to expose yourself to the water, you also got a cramp, and then you drown. If you chose, if you went into the water, it's really a question of how you define things. I mean, quite arguably, when you go into the water, you're exposing yourself. Particularly if you're like me and don't get an exercise at all and then say, well, I'm going to go out and swim. Quite arguably, you're exposing yourself to the possibilities. Like my mother used to say, you're going to get a cramp. Be careful going in the water because you might get a cramp. All right. Why isn't that part of... I mean, my guess is the chances of somebody drowning because they get a cramp are much greater than... although we don't know the record doesn't reflect it. Then you're going to guess what this guy got climbing Kilimanjaro. And I still say it's because there are, there is more than one event which you voluntarily undertook. You didn't voluntarily choose to have a cramp. He voluntarily chose to expose himself to the only condition. See, the difference is you voluntarily exposed yourself to the condition that gave you the cramp. He voluntarily exposed himself to the condition that gave him pain. So, I'm having trouble when you keep trying to add something into the cramp situation or to some other situation when you're like scuba diving, for example. What is the additional event? The additional event is the fact that you got the cramp. And his additional event is the fact that he got haste. But the... Haste and haste are all the effects of exposure to altitude. And a cramp is an exposure to a water condition after a certain period of time depending on the individual. But the difference is that that he died, whether you call it hape or haste or high altitude sickness, he died from exposing himself to the condition, intentionally wanting to reach the conditions that created his death. If you're swimming in the water, if you go in with the intent to have a cramp as well as swim, then you're tying to our situation. But... We really have some insurance policy difficulties. We really have to split hairs about whether you jumped off a cliff or hang gliding because you intended to die or you didn't intend to die or you went in thinking you'd get a cramp or didn't get a cramp. Are you suggesting that that will be the test then? The test goes back to what the court talked about, the definition. In this case, the definition, the requirement is that the insured die solely as the result of an accident. Solely as the result of an accident. And in this situation... Let's say you're scuba diving and you're down pretty low and your weight belt buckle breaks. I'm sorry? Your weight belt? Your weight belt. Divers carry weights to prevent a cramp. And so the buckle breaks, you drop 35 pounds of weight and you go up... too quick and you get the bounce. And die. The weight belt is an additional event. It's the mishap, mischance or unexpected event that the court talked about in Botts and Phillips. And in... What if there was no weight belt and you just got the bounce and died? Because it's a pressure disequilibrium down there. That occurs because not only did you die, but you also swam up too quickly. That's a different situation than only... If he died... Let's say he does it on a... Let's say he gets nitrogen narcosis. He feels a lot disoriented and you take off your weight belt, which divers will take off their mask, they'll take off their oxygen, they'll take off their weight belt. And let's say he does all three of those. He takes off his oxygen, he takes off his weight belt, comes up to the top, much too quickly, and dies. And I think, again, if you did... Because of nitrogen narcosis. Because of nitrogen narcosis, which is not the condition he intended to expose himself to. And that's what the court talks about is the distinction. You're going to differentiate between nitrogen narcosis and pain? Nitrogen nar... That's a very hard one. Nitrogen narcosis happens... Because... It's seldom. It's seldom. But it doesn't happen just because you died. It happens because there are other events. Actually, it does happen occasionally because you die. Too much nitrogen gets into your bloodstream. I think that if you could establish that the only reason for getting nitrogen narcosis was diving to a condition where you're exposed to that and you chose to expose yourself to that, you'd fall into the same problem you have here. But when you're talking about the added event of the belt breaking or something like that, that is the misstep or mischance that's missing here. The only thing that caused his death was the exposure... As a matter of misjudgment, you think you're going up slowly, but you just... You're confused. You're distracted. You're chasing a fish, a beautiful fish or something, and you don't realize and you go up far too quickly because of carelessness. I don't think I could give you... And you get bent and die. I don't think I could give you a definition that's going to satisfy every possible situation that we could come up with. We could, for hours, come up with things, which is one of the reasons the court has talked about there is no single definition. It's part of the reason why there are not specific definitions in the policy. But there is a fundamental... There's sort of a fundamental... So this is the theme to all of this. And that is, people engage in activities, some of which tend to be more dangerous than others. Correct. There's no totally safe mode of transportation other than elevators. Only... No, they're not safe either. Look at all the cases against Otis elevator. Yes. They're safer than almost anything else, but you can't walk. You can't ride escalators. You can't fly planes. You can't ride automobiles. You can't do almost anything in life without having some risk of something happening. Correct. And then there are some things that people do that are... The risk is built in. That are, you know, snowboarding, skiing, buggy jumping. I've done all of those for you. Most of the... It's made for human beings. It's not, you know, they go on those rides in amusement parks. Yep. Also to... Which are more dangerous, I suppose, and carry some inherent risk that's greater than normal living, but people do them because you live, and part of life is doing some things that are exciting and interesting and different. And then a small number of the people who engage in those activities wind up suffering what I guess one could say is foreseeable consequences of those activities. The buggy jumper maybe has a heart attack or somebody snowboarding winds up running to a tree. And the question is, if you're insuring against accidents, why does that not include in remote but foreseeable consequences? The kind of activities that people engage in their lives. And if your client doesn't want to insure your activity, you could just say, climbing is out, buggy jumping is out. And you could have insurance policies that people complain about are already too long, and you could go on forever and list things, and people would continuously come up with things that you hadn't thought of, but that doesn't mean that it's accidental. You have to tie this in back to the very beginning of my point. You have to tie this into the context. We're not talking about the intent or expectation from the standpoint of the insured at the time the event occurs. It is the intent, it is the meaning of the term accident at the time the policy is purchased, and it is tied to the nature of the policy. In this situation, we have a life insurance policy with an accidental death rider. The accidental death rider is intended not to cover  that are in the life policy, only accidents. And if you take the definition that Mr. Talley is urging, you are making the two synonymous. That is not the intent, and the court has talked about the difference between when you look at something from a first-party perspective, analyzing accident in that perspective, and a person's choice to expose themselves to the very risk that causes their death, versus exposing yourself to a condition where something else happens, something, some misstep, some mischance, the snowstorm, the absence of a co-worker to get you to a shack to warm up any of those things. And they're all different situations. Thank you. I think your time is up. We'll give you a minute for a button. I just want to make a couple of real quick points about the case law. They've focused on the Phillips case a number of times here, and that's, of course, not an Oregon appellate court decision. It's District Court of Oregon from 1970, and if you look at that, virtually all of the opinion is spent talking about the facts in that case. They've got only about a paragraph where they have any kind of legal analysis at all, and what they do is they take a citation from another district court case that's unpublished, and they sort of conflate that with the Finley standard. And it's just, I don't think, a very well-reasoned decision, and it was criticized quite a bit by the House decision, which is an Oregon appellate court case. So to the extent it says something about a foreseeability standard, I just don't think it's particularly good authority. The other point I wanted to make was they've said a number of times that all of these third-party liability cases that we relied on need to be just sort of swept aside because the context matters. And you look at the McCormick and Baxter case, and it says exactly the opposite. It says that the Finley definition applies even in liability policies, and, in fact, there's another one called Ramco from 1968 that does the same thing. So the context, I think, does not matter. The same definition has been applied in both this kind of a policy and in liability policies over and over again. Unless you have any other questions, I think that's it. Thank you. Okay, I'm sorry. You're going to stand some minutes. Thank you. Way out of job. All rise. This court presents that you stand to hear.
judges: D Nelson, Kozinski, McKeown